UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARVIN ARIDO-SORRO,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, Seattle Field Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE), et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03203-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Marvin Arrido-Sorro's Amended Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 17. Having considered the habeas petition, Respondents' return memorandum (Dkt. No. 20), Petitioner's traverse (Dkt. No. 23), and the relevant record, the Court GRANTS IN PART AND DENIES IN PART the habeas petition and ORDERS Respondents to provide Petitioner with a bond hearing before an Immigration Judge ("IJ").

## I. Background

Petitioner is detained at the Northwest ICE Processing Center ("NWIPC") pursuant to 8 U.S.C. § 1226(c). Dkt. No. 17 ¶¶ 3, 42; Dkt. No. 20 at 1. Petitioner has been in immigration detention since his release from criminal custody in December 2021. Dkt. No. 17 ¶ 27.

In 2024, Petitioner, then proceeding pro se, filed a petition for writ of habeas corpus. *Id.* ¶ 29 (citing *Arido-Sorro v. Garland*, No. 2:23-cv-00842, 2024 WL 4393264 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 (Nov. 20, 2024)). The petition was granted in part and the respondents were ordered to provide Petitioner with a bond hearing at which the government bore the burden of proof by clear and convincing evidence that Petitioner posed either a flight risk or a danger if released. *See id.* On December 12, 2024, a bond hearing was held at the Florence, Arizona, Immigration Court. *Id.* ¶ 30. The immigration judge denied Petitioner's request for bond, finding that Petitioner was both a flight risk and a danger to the community. *Id.*

On January 21, 2025, an order of removal was issued in Petitioner's removal case. *Id.* ¶ 31. The Board of Immigration Appeals ("BIA") upheld the immigration court's denial of relief, and the case is currently under review in the Ninth Circuit Court of Appeals. *Id.*

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

//

//

## III. DISCUSSION

The Parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1226(c). *See* Dkt. No. 17 ¶ 3; Dkt. No. 20 at 1. Under the Immigration and Nationality Act ("INA"), detention of noncitizens described in Section 1226(c)(1) is mandatory throughout the duration of removal proceedings, except in narrow circumstances not present here. *See* 8 U.S.C. 1226(c)(4); *see also Demore v. Kim,* 538 U.S. 510, 513 (2003) (holding that Congress may constitutionally authorize mandatory detention of noncitizens under Section 1226(c) "for the brief period necessary for their removal proceedings"); *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (holding that the INA contains no implicit limitation on the length of mandatory detention without a hearing). On remand from the Supreme Court's decision in *Jennings*, the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so," and directed the district court to determine "the minimum requirements of due process" for noncitizens subject to mandatory detention under the INA. *Rodriguez v. Marin*, 909 F.3d 252, 255, 256 (9th Cir. 2018) (citation modified). In the wake of *Jennings*, "nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (citation modified); *see also Toktosunov v. Wamsley*, No. C25-1724, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

### A. Whether Detention Without a Bond Hearing Has Become Unreasonably Prolonged

The prolonged-detention analysis courts in this District apply to detention under 8 U.S.C. § 1226(c) is the "*Martinez* test" adopted in *Martinez v. Clark*, C18-1669, 2019 WL 5968089

(W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (Nov. 13, 2019). Under the *Martinez* test, courts consider:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made [the petitioner] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

2019 WL 5968089, at *9. If the *Martinez* factors weigh in the petitioner's favor, the district court will find a due process violation, grant the habeas petition, and order the respondents to provide the petitioner with an individualized bond hearing that comports with procedural due process and the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (requiring government to justify continued detention with clear and convincing evidence that noncitizen is a flight risk or danger to the community).

Here, Petitioner has already been granted a bond hearing under *Martinez*, but he argues that because he "has been in civil immigration detention for an unreasonable amount of time since" that first hearing, "his prolonged detention must be justified again by the government." Dkt. No. 17 ¶ 52. Respondents argue that Petitioner's "detention, while prolonged, has not become unconstitutionally indefinite," and he is not entitled to a second court-ordered bond hearing. Dkt. No. 20 at 5. Petitioner "does not argue that he is entitled to a 're-occurring' or 'periodic' bond hearings but rather that his detention has reached another unreasonably prolonged period of time warranting procedural safeguards." Dkt. No. 17 ¶ 4.

Respondents do not mention *Martinez* at all in their return, pointing instead to authority that "Courts in this District generally apply the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), where the petitioner has already received a bond hearing." Dkt. No. 20 at 6 (citing

*Ortuno-Perez v. ICE Field Off. Dir.*, No. C23-344, 2023 WL 5807305, at *4 (W.D. Wash. Aug. 1, 2023), *report and recommendation adopted*, 2023 WL 5802516 (Sept. 7, 2023)). Respondents do not directly dispute Petitioner's argument that "[t]here is no clear authority that would bar Mr. Arido-Sorro from challenging his prolonged detention under *Martinez v. Clark* and seeking another bond hearing, so long as the factors favor him." Dkt. No. 17 ¶ 52. Rather, they decline to provide any argument on the *Martinez* factors, and, following *Ortuno-Perez*, oppose granting Petitioner a second bond hearing under *Mathews*. *See* Dkt. No. 20 at 6–7.

But *Ortuno-Perez* is clearly distinguishable from this case—as Petitioner preemptively pointed out in the amended petition (*see* Dkt. No. 17 ¶ 74), to no answer from Respondents. The petitioner in that matter was detained under 8 U.S.C. § 1226(a), not § 1226(c), and therefore had access to statutory mechanisms for custody redetermination that Petitioner does not. *See* Dkt. No. 17 ¶ 75; 8 C.F.R. § 236.1. Mr. Ortuno-Perez had received an individualized custody determination upon his initial detention by immigration authorities and later requested and was granted two bond review hearings and at least three further administrative custody redeterminations. 2023 WL 5807305 at *2–3. A Section 1226(c) detainee, by contrast, is subject to "mandatory detention" constrained only by the Constitution and caselaw interpreting it.

Accordingly, the Court finds that application of *Martinez* is appropriate here. Because Respondents have waived their opportunity to present argument on any of the *Martinez* factors, the Court has only Petitioner's arguments, and the facts in the record, on which to base its analysis.

**1. Length of Detention**

The length of detention is "the most important factor[.]" *Martinez*, 2019 WL 5968089, at *9. "Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c)

beyond the brief period authorized in *Demore*,[1] the harder it becomes to justify without conducting an individualized bond hearing." *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025). "Detention that has lasted longer than six months is more likely to be unreasonable, and thus contrary to due process, than detention of less than six months." *Id.* (citation modified) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018)).

In this case, Petitioner has been in civil immigration detention for nearly five years. Because a bond hearing was held for him in December 2024, however, his current period of detention *without a bond hearing* is just shy of two years.[2] This is still a "very long time." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118–19 (W.D. Wash. 2019) (finding mandatory detention of 17 months without an individual custody determination "strongly favors" a bond hearing). The Court therefore finds that this factor weighs in favor of granting Petitioner a bond hearing.

**2. Likely Duration of Future Detention**

The second factor for the Court to consider is "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Petitioner appears to argue that this factor favors requiring a bond hearing because "Mr. Arido-Sorro is likely to remain in detention for an indefinite amount of time." Dkt. No. 17 ¶ 83. However, the Supreme Court has definitively held that detention under Section 1226(c) during

---

[1] The petitioner in *Demore* had been in immigration detention for six months, which the Supreme Court, writing in 2003, described as "somewhat longer than the average[.]" 538 U.S. 510, 530–31. The record the Court considered at that time showed that "§ 1226(c) detention not only has a definite termination point, in the majority of cases it lasts for less than . . . 90 days[.]" *Id.* at 529.

[2] Petitioner takes the position that "the *Martinez* factor asks for the 'total' length of detention rather than the length of detention since a prior bond hearing." Dkt. No. 17 ¶ 82. The Court need not consider this argument here but does discuss it in relation to the third factor, whether the duration of immigration detention will exceed the sentence served for the crime that made Petitioner removable. *See infra* Section III.A.3.

removal proceedings is, by definition, not "indefinite" or "potentially permanent," because it will end one way or another when removal proceedings conclude. *Demore*, 538 U.S. at 529 (citation modified).

Here, Petitioner's Ninth Circuit appeal is already fully briefed, oral argument is expected to be scheduled this spring, and a decision is likely to be rendered within the year. Dkt. No. 17 ¶¶ 83–84. If the Court of Appeals either upholds the BIA's decision or grants relief outright under the Convention Against Torture (*see* Dkt. No. 6 ¶ 5), future detention appears likely to end within the year—a shorter period than those which this Court has previously found to tip this factor toward requiring a bond hearing. *See Gonzalez-Valenzuela v. Hernandez*, No. C26-3070, 2026 WL 3257863, at *3–4 (W.D. Wash. Oct. 29, 2026); *San-Miguel Herrera v. Venturella*, No. C26-2732, 2026 WL 3181728, at *3 (W.D. Wash. Oct. 23, 2026). On the other hand, a favorable decision could also result in Petitioner's case being remanded to the Immigration Court, possibly placing him years away from exhausting his judicial appeals. Because these possible outcomes point in opposite directions, the Court finds this factor to be neutral.

**3. Criminal History**

Under the third factor, the Court reviews the length of civil detention compared to "the time the petitioner spent in prison" for the crime or crimes that subjected the petitioner to detention under Section 1226(c). *Martinez*, 2019 WL 5968089, at *9. Under the fourth factor, the Court considers the nature of the crime(s). These factors "are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile." *Juarez v. Wolf*, No. C20-1660, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2025).

In 2016, Mr. Arido-Sorro was convicted of several counts of aggravated assault based on crimes he committed against an intimate partner. Dkt. No. 17 ¶¶ 6, 25. Petitioner concedes that

the nature of these crimes weighs in favor of Respondents. *Id.* ¶ 88. The Court agrees: the fourth factor weighs against requiring a bond hearing.

Petitioner was sentenced to seven and a half years in prison with credit for 463 days. Dkt. No. 22-1 (Sentencing Minute Entry) at 3. He was sentenced on October 13, 2016 (*id.*), and he was transferred to immigration detention on December 15, 2021 (Dkt. No. 17 ¶ 27). Petitioner argues that the fourth factor should weigh in his favor because, within five months from the filing of his amended petition, "Mr. Arido-Sorro's immigration detention duration will exceed his prison time." *Id.* ¶ 87.

There are at least two problems with Petitioner's argument. First, he incorrectly characterizes his time served as "5 years and 2 months in prison" (Dkt. No. 17 ¶ 87) by ignoring the portion of his sentence (463 days) that was served during pretrial detention; the custodial sentence he actually served is approximately six years and five months. Second, it is unclear to the Court whether, under the present circumstances, the Court should analyze the *total length* of immigration detention (roughly five years and counting) or the length of immigration detention *without a bond hearing* (roughly two years and counting). If the latter, Petitioner's detention would need to stretch on another four years or more before this factor tipped in his favor.

Petitioner's analysis of the third factor implicitly incorporates a position he takes in discussing the first factor: that *Martinez* considers "the 'total' length of detention rather than the length of detention since a prior bond hearing." Dkt. No. 17 ¶ 82. However, this is a distinction without a difference in *Martinez*, which specifically addressed the question of whether "unreasonably prolonged detention under § 1226(c) *without a bond hearing* violates due process." 2019 WL 5968089, at *7 (emphasis added). Nothing in that opinion compels the conclusion that time before a previously-ordered bond hearing would be counted as part of this

factor, and Petitioner offers no further analysis to convince the Court that it should. (Respondents, again, offer nothing at all.)

Therefore, with no satisfactory argument from either Party to resolve this question (and no basis to find that Petitioner's detention is likely to exceed four more years), the Court finds the fourth factor to be neutral.

**4. Conditions of Detention**

Next, the Court considers the fifth *Martinez* factor—the conditions of detention. 2019 WL 5968089, at *10. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that [they are] entitled to a bond hearing." *Id.* (citation modified).

"[C]ourts within this district have characterized the conditions in NWIPC as that of a prison, including problems with food, medical neglect, and cleanliness." *Shevchuk v. Scott*, No. 26-1408, 2026 WL 1413609, at *2 (W.D. Wash. May 20, 2026); *see also Hossain v. Scott*, No. 26-923, 2026 WL 1533003, at *6 (W.D. Wash. June 1, 2026) (collecting cases on NWIPC conditions). Petitioner cites a number of cases in which the "[p]oor and prisonlike conditions within the NWIPC are well-documented." Dkt. No. 17 ¶ 89 & n.1 (collecting cases). Based on his own experience, Petitioner also avers that the conditions of immigration detention have been much worse than his time in state custody. Dkt. No. 18 (Arido-Sorro Decl.) ¶¶ 40, 52. Respondents, again, present no argument casting doubt on Petitioner's declaration or distinguishing the conditions he has been subject to from those considered in other cases. Therefore, the Court easily finds the fifth factor weighs in favor of granting Petitioner a bond hearing.

//

//

**5. Delays in Removal Proceedings**

Under the sixth and seventh *Martinez* factors, the Court considers delays in the removal proceedings caused by the detainee or the government, respectively. 2019 WL 5968089 at *10. A "[p]etitioner is entitled to raise legitimate defenses to removal," and exercising one's legal avenues to challenge to removal "cannot undermine [a] claim that detention has become unreasonable." *Juarez*, 2021 WL 2323436, at *6 (citation modified).

Petitioner asserts that he "has not caused any delays in his case that could be categorized as an abuse of process" and is "not fully aware at this time whether the Government has done anything to prolong his detention." Dkt. No. 17 ¶¶ 93, 94. As such (and with no argument from Respondents), the Court presumes that neither Party has caused delay. As it previously has under such a circumstance, *see Gonzalez-Valenzuela*, 2026 WL 3257863, at *5; *San-Miguel Herrera*, 2026 WL 3181728, at *5, the Court therefore finds the sixth and seventh factors to be neutral.

**6. Likelihood that Proceedings Will Result in a Final Order of Removal**

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *See Martinez*, 2019 WL 5968089, at *10. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.* "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.*

Petitioner raised defenses to removal, including by applying for relief under the Convention Against Torture ("CAT"). *See* Dkt. No. 17 ¶¶ 31–32. His appeal challenges the denial of CAT relief, and he argues that the eighth factor favors him because "because [he is] likely to succeed in the 9th circuit." *Id.* ¶¶ 32, 95. Petitioner relies on the declaration of Kari Hong, one of his appellate attorneys. *Id.* ¶ 95 (citing Dkt. No. 6 (Hong Decl.)). Hong, an attorney

with decades of experience bringing hundreds of immigration appeals before the Ninth Circuit, declares under penalty of perjury that Petitioner's Ninth Circuit appeal is "very strong" because the BIA denied CAT relief to Petitioner "by ignoring volumes of evidence establishing that he experienced past torture and faces a near-certain likelihood of torture if he returns to his native country." Dkt. No. 6 ¶¶ 1, 3.

Because this evidence is unrebutted by Respondents, and the Court has no basis to doubt Hong's expert assessment, the Court concludes that this factor weighs in favor of requiring a bond hearing.

* * *

In sum, three of the eight *Martinez* factors, including the most important factor, weigh in favor of granting Petitioner a bond hearing, four are neutral, and one weighs against granting a bond hearing. Given the weight and number of the factors that favor Petitioner, the Court finds that his detention without a bond hearing has become unreasonably prolonged. *See, e.g.*, *Medina v. Scott*, No. C26-2294, 2026 WL 2676649, at *3 (W.D. Wash. Sept. 11, 2026) (finding petitioner entitled to a bond hearing where two or three factors favor petitioner, the rest are neutral, and none favors the government); *Smbat v. Ice Field Off. Dir.,* No. C26-818, 2026 WL 1842663, at *5 (W.D. Wash. June 26, 2026) (same where three factors favor petitioner, three are neutral, and two favor the government). Petitioner is therefore entitled to habeas relief.

### B. Appropriate Relief

Having found that Petitioner's prolonged detention without a bond hearing has become unreasonable, the Court will now address his request for relief.

Petitioner acknowledges that "[c]onsistent with the approach taken by courts in this district, the appropriate remedy here is a bond hearing before an immigration judge rather than immediate release." Dkt. No. 17 ¶ 116 (citing *Maliwat*, 2025 WL 2256711, at *9 (collecting

cases)). Nevertheless, Petitioner asks the Court to order that his bond hearing be held "before a District Court judge not an immigration judge." Dkt. No. 17 ¶ 118. Petitioner argues that this relief is appropriate, first, "because his bond hearing is constitutional in nature and does not derive from any immigration statute or case law" (*id.*), and, second, because a bond hearing before an IJ at the Tacoma Immigration Court may not provide an adequate remedy in light of "a troubling pattern" of recent abuses of discretion at such hearings (*id.* ¶ 120).

Petitioner's first argument makes little sense. To be sure, "if the Court finds that he is entitled to a bond hearing under either *Martinez* or *Mathew*[*s*], then it will be the Fifth Amendment Due Process clause that demands such a hearing." Dkt. No. 17 ¶ 118. But that only means that a Constitutional question is presented in *this habeas action*, which is already before the district court. That the Court finds the Constitution "demands" a bond hearing does not mean the bond hearing itself will somehow present an immigration judge with constitutional questions. To the contrary, the primary questions presented will be the same as in every custody redetermination hearing in immigration court: whether the noncitizen seeking release on bond would "pose a danger to other persons or to property" and "is likely to appear for any scheduled proceeding or interview." *See* 8 CFR § 1003.19(h)(3). For this reason, Petitioner's argument that "Immigration[] judges may be better suited to handle bond hearings that arise out of [8 U.S.C. §] 1226(a)," but "the District Court is better suited to deal with a constitutional bond hearing" has no merit.[3]

Petitioner's second argument is more compelling, and the Court shares Petitioner's concerns "as to whether bond hearings in immigration court are an adequate remedy" in light of

[3] This argument is all the more perplexing given Petitioner's citation to *Maliwat*, which (along with all the cases it "collects") specifically addresses what Petitioner calls "constitutional bond hearing[s]"—that is, hearings required by the Due Process clause after mandatory detention has become unreasonably prolonged—and *not* "bond hearings that arise out of 1226(a)."

the now dozens of cases in which "courts in this District have held that IJs have abused their discretion specifically at bond hearings." Dkt. No. 17 ¶ 120 (collecting cases). But Petitioner has not identified any of these cases as involving convictions for crimes as violent as his, nor does he point to any case in which a district court has ordered the remedy he now seeks. While the Court agrees that *Smith v. Hernandez* is illuminating as to how an IJ's error may compel the court to order release even of a Section 1226(c) detainee with assault and domestic-violence convictions, *see generally* No. C26-1861, 2026 WL 2085853 (W.D. Wash. July 20, 2026), no IJ error has, as of now, occurred in Petitioner's case or violated his rights. If and when it does, Petitioner may bring a second habeas petition, as Mr. Smith did. The Court does not find good cause at this juncture to usurp the immigration court's role in evaluating Petitioner's eligibility for bond.

Therefore, the Court denies Petitioner's request that it order a bond hearing before a United States District Judge, and instead orders the relief commonly granted in this District to habeas petitioners who prevail under *Martinez*: a prompt individualized custody hearing before an immigration judge at which the government bears the burden of demonstrating by clear and convincing evidence that Petitioner's continued detention is necessary because he presents either a present danger to the community or a significant flight risk. *See, e.g.*, *Medina*, 2026 WL 2676649, at *4 (ordering bond hearing within 14 days that "shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community"); *Solis Duran v. ICE Field Off. Dir.*, No. C26-1824, 2026 WL 2225424, at *4 (W.D. Wash. Aug. 3, 2026) (same); *Castaneda-Garcia v. Blanche*, No. C26-1204, 2026 WL 1948001, at *4 (W.D. Wash. July 6, 2026) (same but without mention of contemporaneous record). In lieu of a hearing, Respondents may comply with this Order by releasing Petitioner.

## IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) Petitioner's amended petition for writ of habeas corpus (Dkt. No. 17) is GRANTED IN PART and DENIED IN PART.

(2) Within **fourteen (14) days** of this Order, Respondents SHALL either release Petitioner or provide him with a bond hearing before an immigration judge, unless Petitioner requests more time to prepare for the hearing. At the hearing, the government SHALL bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Respondents SHALL ensure that the hearing is recorded.

(3) Within **fifteen (15) days** of this Order, Respondent SHALL file a Status Report with the Court either confirming that Petitioner received a bond hearing—and informing the Court of the results of the hearing—or confirming Petitioner's release or request for a continuance.

Dated this 24th day of November, 2026.

Tana Lin
United States District Judge